IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | | |
|---|---|---|
| FLEMING STEEL CO., | ) | |
| | ) | |
| Plaintiff, | ) | 2:16-CV-00727-NBF |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE LENIHAN |
| | ) | ECF No. 57 |
| JACOBS ENGINEERING GROUP, INC, | ) | |
| | ) | |
| Defendant, | ) | |

MEMORANDUM ORDER

**FACTS**

Pending before the Court is Plaintiff's Motion for a Protective Order and to Quash a Deposition Subpoena to depose Plaintiff's counsel, John Manfredonia. The basic facts of this case are that the Defendant ("Jacobs") holds a contract from the Navy to design and build a hangar in Guam. Jacobs contacted door manufacturers for assistance in designing the doors for the hangar. Plaintiff, ("Fleming") was selected to work with Jacobs on the hangar door design, without compensation. Fleming alleges it agreed to design the hangar doors without compensation in exchange for Jacobs' promise that it would be the sole source supplier of the hangar doors under the contract. Jacobs alleges that Fleming agreed to help with the door design without compensation in the hope that it would win the door hangar construction contract from the Navy. Fleming was not awarded the door contract by the Navy and this lawsuit, for breach of contract, misrepresentation and unjust enrichment, resulted.

Attorney Manfredonia was hired by Fleming in September 2014. *See* Declaration of John M. Manfredonia, ECF No. 68-1. He states that he was hired as litigation counsel and has not been, nor was he acting as, general counsel. *Id.* Both parties agree that Manfredonia did not become involved until after Fleming was told that it would not be the sole source supplier under

1

the contract, and he was not involved in negotiating the original agreement between the parties. It appears from the documents filed with this Motion and the Response/Reply, that Manfredonia was primarily engaged in trying to convince the Navy to remove the OCI, (organizational conflict of interest), designation from Fleming and assist Fleming with obtaining the contract for the doors. Manfredonia did not enter his appearance in this case until December 13, 2017 with a motion for *pro hac vice* admission at ECF No. 62.

**ARGUMENT**

Defendant noticed the deposition of Manfredonia regarding his "communications with the Navy regarding Fleming's OCI" and his "communications with O'Brien, Gentry and Scott regarding its lobbying work on behalf of Fleming". ECF No. 58-2. Plaintiff argues that, because Manfredonia is its counsel, he should not be subject to deposition except in very limited circumstances and those are not met here. Fleming argues that Manfredonia has had limited conversations with the Navy. Almost everything is in writing and this has been provided to Defendant. The information being sought is not crucial to the issues in this case and there are other means of obtaining this information if it is relevant. As for O'Brien, Gentry and Scott, they are the lobbying firm hired by Fleming to lobby the Navy and any conversations Manfredonia had with them were held in his capacity as counsel for Fleming, in anticipation of litigation, and are protected under the attorney client privilege. ECF No. 58 p. 6.

Jacobs argues that it only seeks to depose Manfredonia about conversations prior to the commencement of litigation and that he is, in effect, a fact witness.

Fleming advocates for the application of the test set forth in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986). Under the test set forth in that case, depositions of opposing counsel are permitted only if (1) no other means exists to obtain the information, (2) the

information sought is relevant and non-privileged, and (3) the information is crucial to the preparation of the case. *Id*. at 1327. Defendant argues that *Shelton* does not apply because the communications it seeks were pre-litigation. It further argues that any privilege associated with Manfredonia's communications with O'Brien has been waived as Manfredonia has produced his communication with that company in discovery. However, Fleming argues that Manfredonia was representing it in anticipation of litigation. Fleming argues that the documents produced do not reveal legal advice or strategy and do not open the door to privileged communication. Depositions of O'Brien are scheduled – and Fleming has not objected- however, it will raise the attorney client privilege and the work product doctrine if O'Brien is questioned about its communications with Manfredonia. ECF No. 68, p. 8 fn.1.

Defendant further argues that the *Shelton* test has not been adopted by this circuit, and, even if it had, the circumstances are entirely different. It is seeking pre-litigation information on communications with a third party. It is seeking only to depose Manfredonia about his pre-litigation communications with the Navy and with the lobbying firm.

**ANALYSIS**

The Third Circuit has not adopted the "*Shelton* Rule." Some courts within the Circuit have adopted it, *See State Farm Mut. Auto. Ins. Co., et al., v. Stavropolskiy*, CV No. 15-5929 and 16-1374, 2017 WL 3116284, at *2 (E.D.Pa. July 21, 2017) and some have not. *See Adeniyi-Jones v. State Farm Mut. Auto. Co.*, CV No.14-7101, 2015 WL 6180965, at *1 (E.D.Pa. Oct. 21, 2015). The Court's research has shown that more courts choose not to apply it. Second, the facts presented here are markedly different than *Shelton*. First, Manfredonia was not counsel of record in this matter until six months after the case was filed, **and** after his deposition was noticed by Jacobs. Mr. Cech filed the case and his appearance has been on the case since the inception.

Therefore, this is a different situation than *Shelton*, where the deposition being sought was of the in house counsel assigned to supervise the litigation for the corporate defendant. In that case, the magistrate judge allowed the deposition and the attorney refused to answer some of the questions on grounds of either attorney client privilege or work product. A motion for sanctions was filed and the district judge held that neither applied to the information being requested. The issue on appeal to the circuit court specifically involved whether the deponent's acknowledgement of the existence of corporate documents was protected. The Eighth Circuit noted that the practice of deposing opposing counsel has become increasingly popular, and acknowledged that such a deposition is not prohibited by the Federal Rules of Civil Procedure. 805 F.2d at 1326. The Court made clear that it was not holding that trial counsel is absolutely immune from being deposed, and established the three factor test set forth above. *Id*. at 1327.

The Court is inclined to agree with the conclusion of its sister court in New Jersey, that "there is no general prohibition against obtaining the deposition of adverse counsel regarding relevant, non-privileged information." *Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990). The appropriate test is found in Fed.R.Civ.P. 26(c), requiring a demonstration of good cause to preclude or limit the testimony, with the burden on the party moving for protection. Caution is particularly warranted where the subject matter would be "heavily intertwined with privileged or confidential information," but it may be entirely appropriate where the attorney may be a fact witness. *Id.* To prevail on a motion for protective order the movant must show annoyance, embarrassment, oppression, or undue burden or expense. None of these have been proven in this case. If the questions posed implicate attorney client privilege or work product protection, Fleming is free to assert those objections and those questions can be reviewed by the Court. *See, Caruso v. Coleman Co.*, CV Nos. 93-

6733 and 94-2779, 1994 WL 613668 (E.D. Pa. Nov. 1, 1994). Attorney client privilege is a communication between counsel and a client or relates to a fact of which the attorney was informed by the client, without the presence of strangers, for the purpose of securing primarily either an opinion of law or legal services or assistance in some legal proceeding (and not for the purpose of committing a crime or tort). *Rhone-Poulenc Rorer, Inc. v. Home Indem.,* 32 F.3d 851, 862 (3d Cir. 1994).

It is not clear that the information sought by Jacobs is protected by the privilege. There is also some issue with waiver, as documented communications between Manfredonia and the Navy, as well as the lobbyists, has been produced. It does not seem that the communications between Manfredonia and the Navy or O'Brien were made with the purpose of obtaining legal advice. The goal appears to have been convincing the Navy to remove the OCI it had placed on Fleming and help it get the contract for the hangar doors. Work product may apply, as the doctrine protects the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. "Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1427-28 (3rd Cir. 1991). If the work product doctrine applies, it may also be raised as an objection by Fleming.

Therefore, this 21st day of December, 2017, **IT IS HEREBY ORDERED** that the Motion for Protective Order, ECF No. 57, is **DENIED.**

**IT IS FURTHER ORDERED** that the Motion to Quash a Deposition Subpoena, ECF No. 57, is **DENIED.**

**IT IS FURTHER ORDERED** that, in accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72(a), and Local Civil Rule 72.C.2., the

parties are allowed fourteen (14) days after the date of service of this Order to file objections to the determinations made herein, which shall specifically designate the parts of the order objected to and the basis for the objection. Any party opposing the objections shall have fourteen (14) days from the date of service of the objections to respond thereto. Failure to file a timely objection shall constitute a waiver of any appellate rights.

BY THE COURT:

*s/ Lisa Pupo Lenihan*
LISA PUPO LENIHAN
United States Magistrate Judge